```
            UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

Jane C. Avery

    v.                                Civil No. 09-cv-265-JD
                                                   Opinion No. 2010 DNH 047

Robert W. Hughes

## O R D E R

Jane Avery sued Robert Hughes, alleging that he breached a lease agreement and a real estate purchase and sale agreement. After Hughes answered the complaint, Avery petitioned for permission to attach $450,000.00 of Hughes's real and other property. Magistrate Judge Muirhead held an evidentiary hearing on the petition and ultimately granted it in part, by allowing an attachment in the amount of $385,709.22. Hughes objects to the order of attachment and requests this court to review the order, pursuant to Federal Rule of Civil Procedure 72(a).

## Background

The facts relevant to Hughes's objection are largely undisputed.[1] On March 26, 2007, Avery, as co-executor of her

---

[1] Only those facts necessary to address the objection are recited.

mother's estate ("Estate"), entered into a purchase and sale agreement with Hughes for real property in Wolfeboro, New Hampshire.  The total price was $1.6 million, which included a "deposit" of $25,000, to be paid by personal check and held in an escrow account.  In addition to the purchase and sales agreement, Hughes and the Estate's executors entered into a lease agreement, dated March 14, 2007, for the same Wolfeboro property.

Paragraph 3 of the purchase and sale agreement provided that "DEPOSIT . . . is to be held in an escrow account by Prudential Spencer-Hughes ("ESCROW AGENT"), in the sum of $25,000.00. ADDITIONAL DEPOSIT will be paid on or before[:] see addendum." Paragraph 14 of the agreement, entitled "LIQUIDATED DAMAGES," stated that, "[i]f BUYER shall default in the performance of [his] obligation under this Agreement, the amount of the deposit may, at the option of SELLER, become the property of SELLER as reasonable liquidated damages."  Paragraph 17, "ADDITIONAL PROVISIONS," stated

> This agreement is contingent upon the owner financing listed in the financing contingency addendum. . . . Should the seller accept the terms and conditions of the sale including the owner financing contingency, the buyer's deposit becomes non-refundable and will be released to the seller prior to the buyer moving into the home, or March 15th 2007, whichever comes first.

The purchase and sale agreement originally required a closing date of November 30, 2007, but Hughes and the Estate's executors

signed an amendment that rescheduled the closing for February 29, 2008.

Hughes occupied the property and paid the amounts due under the lease for several months. He also gave a personal check for $25,000, dated April 12, 2007, directly to the Estate, which the Estate deposited in May, 2007. In late 2007, Hughes stopped paying the amounts due on the lease and failed to complete the closing on February 29, 2008. In April, 2008, he notified the Estate that he had vacated the property, and the Estate accepted that as notice of Hughes's intent to terminate the lease. The Estate then re-marketed the property and eventually closed a sale for $1.2 million in August, 2008.

In Avery's declaration, submitted in support of her petition to attach, she stated that,

> On April 30, May 27, and June 19 of 2008, the Estate (through counsel) advised Hughes that the Property was being actively marketed, and that the Estate intended to accept the first serious offer from a new buyer, which would fix Hughes'[s] liability for loss of value damages at the difference between $1,600,000 and the price of the sale to a new buyer.

Avery Decl. at ¶ 19; see also Compl. at ¶ 22 (containing the same allegation). Hughes stated, in his answer, that he "admits that the Estate communicated to Hughes, through counsel, on April 30, May 27, and June 19, 2008, regarding the marketing of the Property and the Estate's opinion regarding Hughes' liability."

3

Answer at ¶ 22.  He states, however, that he "does not recall being advised that the Estate intended to accept the first serious offer from a new buyer," and that he "denies the remaining allegations contained in Paragraph 22 of the Complaint."  Id.

The Estate assigned its claims against Hughes to Avery, who sued Hughes, claiming damages arising out of the breach of both the purchase and sale agreement and the lease agreement.  The bulk of the damages Avery claims is the difference between the $1.6 million price in the purchase and sale agreement and the $1.2 million price at which the property was ultimately sold.  The amount Avery seeks as actual damages is offset by, inter alia, the $25,000 deposit, which Avery characterizes as "nonrefundable as of 3/15/07 pursuant to [the purchase and sale agreement]."

Avery sought to attach $450,000.00 of Hughes's personal property to ensure that any judgment in her favor could be satisfied.  Avery's petition included several exhibits documenting her damages and a sworn declaration.  Hughes objected to the petition, and attached copies of the two agreements at issue, but he did not attach a declaration or affidavit.  The magistrate judge held an evidentiary hearing, at which both Avery and Hughes testified, and Avery submitted documentary evidence.

Following the hearing, Hughes submitted a request for findings of fact and rulings of law, to which Avery responded.

The magistrate judge issued an order ("Order") allowing attachment of $385,709.22, which consists of $366,790.72 for the breach of the purchase and sale agreement and $18,918.50 for the breach of the lease agreement.  The first amount includes the loss in the sale price, utilities, insurance premiums, property taxes, grounds maintenance, and interest on a home equity line of credit, as well as offsets for the $25,000 deposit and other items that mitigated Avery's loss.[2]  The second amount includes rent, late fees, and utilities, as well as an offset for Hughes's $1,500 security deposit.[3]

## Standard of Review

Federal Rule of Civil Procedure 72(a) allows a magistrate judge to hear and decide a nondispositive matter and issue a written order stating the decision.  When a party objects to that order, "[t]he district judge in the case must consider timely

---

[2] The attachment amount does not include the $7,000 staging costs claimed by Avery because the magistrate judge found that Avery had not carried her burden of proof as to those costs.

[3] The magistrate judge also excluded from the attachment Avery's claim for legal fees, because he found that she provided no evidence that the fees were reasonable.

objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also Powershare, Inc. v. Syntel, Inc., --- F.3d ----, 2010 WL 682513, at *2 (1st Cir. Mar. 1, 2010). "When . . . review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." Powershare, 2010 WL 682513, at *3. "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under [a] de novo standard." Id. "Under the clearly erroneous standard, the court 'must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the court] form[s] a strong unyielding belief that a mistake has been made.'" Flagstar Bank, FSB v. FreeStar Bank, N.A., No. 09-cv-225-SM, 2009 WL 3756898, at *2 (D.N.H. Nov. 9, 2009) (quoting Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (alterations in original).

Discussion

Hughes objects to the Order on three grounds: 1) the Order did not require Avery to meet the high bar required to obtain an attachment; 2) the Order improperly excluded Hughes's proposed

findings of fact and rulings of law, which Hughes contends were supported by evidence at the hearing; and 3) the Order failed to consider each provision of the contract related to the $25,000 deposit, which led to an incorrect interpretation of the purchase and sale agreement.  Avery responds, contending that the Order is neither clearly erroneous nor contrary to law.

The Order laid out the standard of review for prejudgment attachments, explaining that Avery must make a strong showing that she will ultimately prevail on her claims and obtain judgment in an amount equal to or greater than the attachment request.  Order at 6.  The Order clarified that the parties do not dispute that Hughes breached the purchase and sale agreement, and that the remaining issue with respect to that agreement, which Avery had to show in order to attach Hughes's property, was whether the amount of the attachment was appropriate.  In order to meet her burden, Avery had to show either that the liquidated damages clause was invalid (or, as she argues, "never became operative") or that she did not opt to retain the liquidated damages.

Examining the applicability of both Orr v. Goodwin, 157 N.H. 511 (2008), on which Hughes relied, and C&M Realty Trust v. Wiedenkeller, 133 N.H. 470 (1990), the magistrate judge interpreted the terms of the contract and concluded that the

liquidated damages paragraph (14) and the additional provisions paragraph (17) were complementary. The Order explained that the description in paragraph 17 of the deposit as "nonrefundable" "emphasizes what Paragraph 14 states regarding the seller's option of electing the remedy of liquidated damages for a breach." In other words, the magistrate judge agreed with Hughes that both provisions were operative, and that the $25,000 "nonrefundable deposit" could serve as liquidated damages. The Order explained, however, that the deposit would only be considered to be liquidated damages "if [Avery] elected the remedy of liquidated damages." Order at 11.

The Order went on to consider whether, in fact, Avery had elected the remedy of liquidated damages, which would preclude her from asserting a claim for actual damages. The magistrate judge carefully examined all of the evidence on the issue. The Order quoted the portion of Avery's sworn declaration stating that the Estate told Hughes on three occasions in 2008 that the first serious offer from a new buyer would be accepted, and that Hughes's liability would then be fixed at the difference between the new selling price and Hughes's $1.6 million contract price. The judge noted that, while Hughes denied those allegations in his answer, the answer was not verified, and "Hughes provided no

evidence or testimony to challenge what I infer to be the meaning of Avery's statement." Order at 13.

The Order applied the correct standard of proof to Avery's attachment petition, and held that the $25,000 deposit could, under the purchase and sale agreement, be considered liquidated damages, but that Hughes failed to show that Avery opted to accept liquidated damages in lieu of actual damages. The magistrate judge properly considered all the evidence before him, the bulk of which was submitted by Avery. Hughes has not shown that the Order is clearly erroneous or contrary to law.

## Conclusion

For the foregoing reasons, the magistrate judge's order of attachment (doc. no. 20) is not set aside. The attachment shall issue as directed in that order.

SO ORDERED.

_Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

March 16, 2010

cc: Laurie R. Bishop, Esquire
    Timothy a. Gudas, Esquire
    William C. Saturley, Esquire