```
            UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

<u>Jane C. Avery</u>

     v.                                      Civil No. 09-cv-265-JD
                                              Opinion No. 2010 DNH 181

<u>Robert W. Hughes</u>

## O R D E R

Jane Avery brought breach of contract claims against Robert Hughes, alleging that he breached a lease agreement and a purchase and sale agreement. The court granted summary judgment in Avery's favor on her claim that Hughes breached the lease agreement. As a result, Hughes is liable for $18,918.50 in unpaid rent, late charges, and utilities. In addition, under the terms of the lease agreement, Hughes must pay attorneys' fees and expenses that Avery incurred to enforce Hughes's breach of the lease agreement.

## <u>Discussion</u>

Avery seeks a total award of $34,714.67 for her expenses and attorneys' fees incurred as a result of Hughes's breach of the lease agreement. Her counsel has submitted an affidavit and invoices in support of her request, claiming $1,637.19 in fees for work exclusively related to the lease and $33,077.48 as fifty

percent of the fees and costs that were incurred in enforcing and litigating both the lease and the purchase and sale agreement. Hughes objects to the amount of fees and expenses Avery requests, contending that the amount is not reasonable in light of the damages owed for his breach of the lease agreement and the lack of complexity of the breach issue.

Under New Hampshire law, "[a] prevailing party may be awarded attorney's fees when that recovery is authorized by . . . an agreement between the parties . . . ." Tulley v. Sheldon, 159 N.H. 269, 272 (2009) (internal quotation marks omitted). "The interpretation of a lease, like any contract language, is ultimately an issue for the court to decide." One Beacon Ins., LLC v. M & M Pizza, Inc., --- N.H. ---, 2010 WL 3269899, at *2 (N.H. Aug. 19, 2010). "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated." Id.

In this case, the lease agreement provides in pertinent part: "If Landlord seeks legal advice or assistance to enforce any breach of the Lease . . . , the Tenant agrees to pay all costs, charges, and expenses, including attorneys' fees. Specifically, Tenant is liable for all such costs involved in any eviction or collection action in which Landlord is successful."

Although the fees provision does not explicitly state "reasonable attorneys' fees," the court construes the agreement to limit the award to reasonable fees. Because Avery was successful in her collection action against Hughes, he is liable for all costs, charges, expenses, including reasonable attorneys' fees involved in the collection action against him.

Reasonable attorneys' fees are determined based on a variety of factors, including "the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on his client." Bianco, P.A. v. Home Ins. Co., 147 N.H. 249, 251 (2001) (internal quotation marks omitted). When a party is entitled to attorneys' fees on some claims but not others, if the claims are "analytically severable, any fee award should be reduced to exclude time spent" on the ineligible claims. LaMontagne Builders, Inc. v. Brooks, 154 N.H. 252, 261 (2006). If work on the eligible and ineligible claims is not severable, however, the fees should not be reduced or otherwise divided among the claims. Bianco, 147 N.H. at 253; see also EnergyNorth Nat. Gas, Inc. v. Century Indem. Co., 452 F.3d 44, 58 (1st Cir. 2006).

In a footnote, Hughes challenges $800 in fees that Avery allocates to work done exclusively on the lease on August 30 and 31. He contends that because the only issue related to the lease at that point in the case was whether the attorneys' fees issue would be submitted to the jury, $800 is too much for that work. The challenged entries are 1.9 hours of time used to brief the issue of whether the claim for attorneys' fees would be submitted to the jury, and a half hour of planning and conferencing about settlement and the attorneys' fees issue. Hughes does not elaborate beyond challenging the amount claimed.

In response to the court's request for jury instructions on the attorneys' fees issue, Avery's attorney generated a two-page filing that stated, with citation to pertinent authority, that the attorneys' fees issue was not an issue for the jury but instead should be tried to the court. Hughes also filed a memorandum on that issue. Without a more developed challenge from Hughes as to the appropriate charge for the work done by Avery's counsel, the court cannot conclude that the time used to prepare the filing and to conference about the lease and settlement was inordinately long.

Hughes also challenges the amount of fees Avery requests based on a fifty percent allocation of the fees incurred for work done on both the lease and purchase and sale agreement issues.

4

The issues of enforcing the lease and the purchase and sale agreement were related as both pertained to the same property and the same person, Hughes.  The entries in Avery's attorneys' invoices show that the attorneys noted work done for the separate issues of the lease and the purchase and sale agreement but lumped the work together for purposes of assessing the fee.

Because Avery's attorneys anticipated seeking an award of fees based on the terms of the lease agreement, they should have segregated the time spent on the lease from time spent on the purchase and sale agreement.  For most of the mixed entries, Avery has not attempted to parse through the billing records to determine or at least estimate how much time was spent on the lease in the mixed entries.

The court is persuaded that fifty percent of the time spent on both the lease and purchase and sale agreement is not reasonable in light of the amount recovered for breach of the lease and the relative lack of complexity of the issues involved in enforcing the lease.  Because the two issues were separate matters, they were analytically severable, although Avery's attorneys combine the issues in their billing records.  Hughes argues that ten percent of the mixed entries would be a reasonable allocation for work on the lease.

Avery's attorneys charged $15,798.65 in fees for work done on the purchase and sale agreement exclusively and only $1,637.19 for work done on the lease exclusively.  Therefore, Avery's attorneys spent about one tenth as much exclusive time on the lease issues.  In addition, Avery recovered $18,918.50 on her lease claim and $263,734.25 on her purchase and sale agreement claim, making her recovery on the lease claim less than ten percent of her recovery for breach of the purchase and sale agreement.  After considering all of the relevant factors, a reasonable allocation to the lease claim fees is one tenth of the fees and expenses incurred on both issues in the mixed entries.

Hughes further contends that the mixed entries after August 11, 2010, should not be included in the allocation because by that time the lease issue had been resolved by summary judgment. Hughes does not identify the specific entries he challenges after August 11, and his calculation of an appropriate reduction in the amount of fees, $1560.69, does not appear to correlate with the fee entries after August 11, which are round numbers.  To the extent Hughes may have included some of the costs and expenses billed during that time, he failed to specify which entries he is challenging, some of which may pertain to the allowed time spent exclusively on the lease.  While Hughes raises a valid question about Avery's attorneys' mixed entries after August 11, he did

not provide sufficient detail and explanation to support his challenge.

### Conclusion

For the foregoing reasons, the plaintiff's motion for an award of attorneys' fees (document no. 71) is granted to the extent provided as follows:

1. Fees for lease exclusively:        $ 1,637.19
2. One tenth of fees and expenses
       for mixed entries:              6,615.50

   TOTAL FEES AND COSTS               $ 8,252.69

The clerk shall enter judgment and close the case.

SO ORDERED.

                                    /s/ Joseph A. DiClerico, Jr.
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

October 19, 2010

cc:   Laurie R. Bishop, Esquire
      Timothy A. Gudas, Esquire
      William C. Saturley, Esquire