```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Jane C. Avery

    v.                                    Civil No. 09-cv-265-JD
                                          Opinion No. 2015 DNH 092
Robert W. Hughes


O R D E R

Following a trial by jury, judgment was entered in this case on November 1, 2010, in favor of Jane C. Avery on her claims against Robert W. Hughes.  When Hughes failed to pay the judgment, he was ordered to make periodic payments.  Avery now moves to reopen the case and asks the court to hold Hughes in contempt for failing to comply with the periodic payments order and also seeks a writ of execution on Hughes's property, including his ownership interest in Prudential Spencer-Hughes Real Estate, Inc.  Hughes objects to the motion.

Background

Avery's mother owned property with frontage on Lake Winnepesaukee.  After her mother's death, the Estate listed the property for sale with Prudential Spencer-Hughes Real Estate, Inc., which is owned and operated by Hughes.[1]  Hughes decided to

---

[1] Avery was co-executor of her mother's estate.

buy the property himself and signed a purchase and sale agreement for that purpose. Hughes also leased and lived at the property, pending the sale.

When Hughes failed to close on the purchase and sale agreement and also failed to pay rent and make utility payments, as required by the lease agreement, Avery filed suit in June of 2009.[2] The property was later sold to someone else for a lower price. Avery claimed damages for the loss suffered in the sale and for the amount of unpaid rent and utilities. Pursuant to the orders issued on January 20, 2010, and March 16, 2010, Avery was granted a prejudgment trustee attachment against Spencer-Hughes Inc. and a real estate attachment against Robert Hughes, in the amount of $385,709.22. The returns on the attachments were filed on April 27, 2010 (documents nos. 26 and 27).

Avery moved for partial summary judgment. She sought rulings on Count I that Hughes breached the lease agreement and was liable for certain damages, and on Count II, that Hughes breached the purchase and sale agreement and that her damages were not limited to the amount of the deposit. The court granted the motion, finding Hughes had breached both the lease agreement and the purchase and sale agreement, that Avery was entitled to at least $18,918.50, less the security deposit, as

---

[2] The Estate assigned its claims against Hughes to Avery.

2

damages for breach of the lease, and that damages for breach of the purchase and sale agreement were not limited to the amount of the deposit.  The issues that then remained for trial were what, if any, additional damages were owed to Avery for breach of the lease agreement and an assessment of damages for breach of the purchase and sale agreement.  The court urged the parties to undertake good faith negotiations or mediation to resolve the remaining issues.

No settlement occurred, and trial began on September 8, 2010.  On September 9, 2010, the jury found that the fair market value of the house when Hughes breached the purchase and sale agreement was $1,300,000 and that Avery was entitled to consequential damages for certain listed expenses, which yielded damages in the amount of $263,734.25.  The court awarded Avery attorneys' fees and costs in the amount of $8,252.69.  The amended judgment was entered on November 1, 2010.  The First Circuit affirmed the judgment on November 18, 2011.

On April 15, 2013, Avery moved to reopen the case, because Hughes had not paid the judgment, and asked for a hearing to determine Hughes's ability to pay and for an order requiring Hughes to make periodic payments on the judgment, pursuant to RSA 524:6-a.  Avery represented that the amount owed then exceeded $301,281.04.  A hearing was held on June 12, 2013.  The financial evidence presented at the hearing was out of date and

did not comply with the requirements of RSA 524:6-a. For that reason, the issue of Hughes's ability to pay the judgment could not be determined. The court ordered Hughes to file the required affidavit, with any appropriate explanations, and ordered Avery to file an amended motion to enforce the judgment, based on the new financial information.

A second hearing was held on August 28, 2013. Hughes was the only witness. Hughes did not dispute the amount he owed Avery and acknowledged that he had not made any payments on the judgment. Following the hearing, the court ordered Hughes to pay Avery $10,000 on or before November 1, 2013, and to pay Avery $1,500 on the first day of each month thereafter, beginning on December 1, 2013, through November 1, 2014. Avery was ordered to file a motion for a hearing to reevaluate the terms of the periodic payment schedule on or before November 1, 2014.

Avery did not file a motion for a hearing to reevaluate the payment schedule on or before November 1, 2014. Neither Hughes nor Avery contacted the court or made any filing in the case within the time allowed.

On February 26, 2015, Avery filed a motion for a status conference hearing. In support, Avery stated that Hughes stopped making monthly payments in "approximately May or June of 2014." She further stated that she attempted to get Hughes to

4

comply with the payment order but he refused, citing family health issues during the fall and into the winter. Avery said that she "forestalled seeking judicial relief" because of the reported health issues. Without citing any legal support or providing any evidence, Avery asked the court to schedule a hearing "to evaluate the violation of the Court Order by Hughes, and his failure to make payments," for "entry of appropriate sanctions and other relief for such violation," to reevaluate the terms of the payment schedule "including but not limited to compelling Hughes to participate in a valuation of his business," and to allow Avery "to file for and execute on a writ of execution."

As such, Avery, who is represented by counsel, failed to request specific relief and failed to provide any factual or legal support for any of the relief alluded to in the list. Her motion was denied, but she was granted leave to file a motion to reopen the case and to seek specific relief with appropriate legal and factual support. Avery filed a motion to reopen, and Hughes filed an objection.

## Discussion

Avery moves to reopen the case and for an order holding Hughes in contempt for failing to comply with the payment schedule order and for a writ of execution on Hughes's interest

5

in Prudential Spencer-Hughes Real Estate, Inc. or, if necessary, an order requiring Hughes to sell his interest. In his objection, Hughes acknowledges that he has not made payments to Avery since June of 2014. He argues that he is financially unable to make the ordered payments and that executing on or liquidating his business will not satisfy the debt and will remove his best chance for financial recovery.

A.  Contempt

For purposes of civil contempt, the order to be enforced is the order issued on September 4, 2013. Hughes was ordered to pay Avery $10,000 on or before November 1, 2013, and to pay Avery $1,500 on the first day of each month beginning on December 1, 2013, through November 1, 2014. By its terms, the payment schedule order has expired. No new terms were requested or have been ordered.

"Civil contempt may be imposed to compel compliance with a court order or to compensate a party harmed by non-compliance." United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005). "To prove civil contempt, a movant must show that (1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order." Hawkins v. Dep't of Health & Human Servs. for N.H.,

6

665 F.3d 25, 31 (1st Cir. 2012) (internal quotation marks omitted). The moving party must prove all four parts required for a civil contempt order by clear and convincing evidence. AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 426 (1st Cir. 2015).

The alleged contemnor is entitled to notice and an opportunity to be heard before civil contempt sanctions are imposed. Id. An evidentiary hearing is necessary only to the extent that material facts are in dispute. Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77 (1st Cir. 2002). Once civil contempt is found, the court has "wide discretion" in imposing sanctions, although the sanctions should be "reasonably proportionate to the offending conduct." Baella-Silva v. Hulsey, 454 F.3d 5, 12-13 (1st Cir. 2006).

In this case, there appears to be no dispute that Hughes had notice of the payment schedule order, that the order was clear and unambiguous, and that Hughes violated the order by not making the payments as he was ordered to do. The only issue in dispute, therefore, is whether Hughes had the ability to comply with the payment schedule.

Avery bears the burden of showing, by clear and convincing evidence, that Hughes had the ability to make the payments, as ordered. The clear and convincing evidence standard requires more proof than a preponderance but not as much as beyond a

7

reasonable doubt. See Hawkins v. Comm'r, N.H. Dep't of Health & Human Servs., 2010 WL 2039821, at *2 (D.N.H. May 19, 2010). The standard is met only if the moving party can establish in the court "an abiding conviction that the truth of its factual contentions [is] highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal quotation marks omitted).

Because Hughes disputes his ability to make the ordered payments, an evidentiary hearing will be necessary to determine that issue. Given the high standard of proof, Avery will be expected to provide evidence of Hughes's ability to pay beyond the affidavit he provided in February of 2015.

B.  Writ of Execution or Other Court Order

Avery also seeks a writ of execution or an order for the sale and liquidation of Hughes's ownership interest in Prudential Spencer-Hughes Real Estate, Inc. She invokes RSA 527:12 to support her request for a writ of execution and also, alternatively, seeks a writ of possession pursuant to RSA 527:13. Further along in the discussion, Avery cites RSA 511:21-a as grounds for an attachment on Hughes's ownership interest if that interest is not represented by stock certificates and RSA 382-A:8-112 as grounds for an order to reach the ownership interest if it is an uncertified security.

In this court, "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise," using the procedure "of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Based on the record in this case, Avery has an attachment on all of Hughes's real estate and personal property, including "the money, goods, chattels, rights and credits" of Prudential Spencer-Hughes Real Estate, Inc. that are "in the hands and possession" of Hughes. See RSA 511-A:5; docket nos. 26 & 27. An attachment on real or personal property continues for six years "from the time of rendering a judgment in the action in favor of the plaintiff on which he can take execution." RSA 511:55, I. A writ of execution on a judgment may be issued within six years after the judgment when there is an attachment on real or personal property. RSA 527:6.

Judgment was entered by this court on October 20, 2010, and the First Circuit affirmed the judgment on November 21, 2011. Six years has not passed since the judgment was rendered. Therefore, a writ of execution shall issue on the real and personal property that is subject to the prejudgment attachment.

## Conclusion

For the foregoing reasons, the plaintiff's motion to reopen the case (document no. 105) is granted to the extent that the case is reopened and a writ of execution shall issue.

A hearing will be set on the plaintiff's request for imposition of sanctions for civil contempt.  Counsel shall contact the clerk's office to arrange a date for the hearing.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

May 6, 2015

cc:  Christopher James Pyles, Esq.
     William C. Saturley, Esq.
     Martin P. Honigberg, Esq.